```
                                              RECEIVED
     IN THE UNITED STATES DISTRICT COURT       MAR 2 8 2008
        FOR THE DISTRICT OF COLOMBIA
                                           NANCY MAYER WHITTINGTON, CLERK
                                               U.S. DISTRICT COURT
```

| | |
|---|---|
| ROBERT VENETUCCI,       ) | |
|     Plaintiff,     ) | |
|                        ) | |
| v.                       ) | Case No. 07-cv-1521(RWR) |
|                        ) | |
| DEPARTMENT OF STATE,     ) | |
|     Defendant.     ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

COMES NOW, Plaintiff, Robert Venetucci pro se, who, again, asks for liberal consideration as Plaintiff is a lay person. HAINES v. KERNER, 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972).

The Defendant contends that the Plaintiff has filed three Habeaus Corpus petitions in the United States District Court for the District of Minnesota. They also contend that Plaintiff filed a Complaint in the Eastern District of New York. In all of these cases, the issue that the State Department lacked jurisdiction to agree to the Plaintiff being tried without Judicial review has never been presented by Plaintiff in any court before this one. As states in Plaintiff's Response To Defendant's Motion to Dismiss, this Court retains jurisdiction in this case pursuant to 28 U.S.C. §1331.

The Defendant, in both the Defendant's Memorandum Of Points And Authorites In Support Of Its Motion To Dismiss and Defendant's Reply In Support Of Motion To Dismiss cite BERENGUER v. VANCE, 473 F. Supp 1191 (D.D.C. 1979). In this case BERENGUER was to be

extradited to Italy. Italy later asked that the original warrant and surrender under extradition be expanded, towhich, the State Department agreed. Berenguer was a French citizen, incarcerated at the federal penitentiary in Lewisburg, Pennsylvania. Being a French citizen he would not warrant the same protection as the Plaintiff, a United States citizen. Once Berenguer was extradited, the United States really has no more authority over him. Plaintiff, on the other hand, being a United States citizen, is still afforded the rights and protections of the Constitution of the United States. "[t]he Constitution requires that a United States citizen who could be denied his liberty through extradition to a foreign country have his case heard by a judge imbued with the independent judicial power guaranteed by Article III." AUSTIN v. HEALEY, 5 F.3d 598,602 (2nd Cir. 1993).

The Plaintiff has argued that the State Department did not have the authority to grant Italy's request to try Plaintiff without judicial review. As stated in AUSTIN, ("The 1848 Act was designed to limit executive power... The underlying theory was that the judiciary should have the authority to review executive action so that fundamental individual liberty would not be improperly infringed.", Mackin, 668 F.2d at 134-35 (in which Judge Friendly chronicles how executive abuse of its nearly absolute discretion inextradition matter led Congress in 1848 to enact what is now section 3184). Thus, by Section 3184, Congress interposed the judiciary between the Executive branch and the individual." Id. at 604. AUSTIN goes on to state that "Although we agree that extrad-

ition without an unbiased hearing before an independent judiciary [is] highly dangerous to liberty". Id. 604, quoting IN RE KAINE, 55 U.S. (14 How.) 103,112, 14 L. Ed. 345 (1852). In LO DUCA v. U.S., 93 F. 3d 1100 (2nd Cir. 1996) the Constitutionality of 18 U.S.C. §3184 is dicussed and the procedure is laid out as follows:

> "The extradition statue requires the Government to submit a formal complaint setting forth the Legal and factual bases for extradition. The complaint must be brought before an extradition officer - "any justice or judge of the United States, or any magistrate authorized... by a court of the United States, or any judge of a court of record of general jurisdiction of any State..." 18 U.S.C. §3184. The extradition officer is then directed to hear and consider the "evidence of criminality" Id. If the evidence is sufficient "to sustain the charge under the provisions of the proper treaty or convention," the extradition officer is instructed to issue a certificate of extraditability to the Secretary of State. Id. At that point, the Secretary of State has the final authority to extradite the fugitive, but is not required to do so."

Id. at 1103. With that being said, Plaintiff is also aware that "the Executive branch retains plenary discretion to refuse extradition... On the other hand, if extradition officer declines to issue a certificate of extraditability, the complaint is dismissed and the Secretary of State has no authority to order the surrender of the fugitive." LO DUCA, at 1104 citing IN RE MACKIN, 668 F. 2d 122, 125-28 (2nd Cir. 1981).

The seperation of powers is highly regarded and protected by the Constitution. "The Supreme Court has rebuffed prior attempts by Congress to create a scheme whereby the Judical branch renders a preliminary legal ruling which the Executive may then accept or ignore. That such a regime violates constitutional seperation-of-powers principles is apparently so obvious that the cases cited by plaintiffs are well over 100 years old." LOBUE v. CHRISTOPHER,

893 F. Supp. 65,72 (D.D.C. 1995). In fact, the judge in this case, Judge Lamberth, has declared the current extradition scheme in which the decision of the Judicial branch is only "preliminary" and, upon certification, the Executive hold the final decision to extradite as **UNCONSTITUTIONAL**. Judge Lamberth "ORDERED that insofar as it purports to confer upon members of the Executive branch the power to review decisions of Article III federal judges and United States magistrates, Title 18, §3184 of the United States Code is hereby declared to violate the United States Constitution". LOBUE at 78.

Without proper review of the "evidence of criminality" by an unbias, non-political person, the Judicial Officer, the liberty of the person, the Plaintiff, to be tried on "Additional Charges" are violated. If this were allowed to continue, countries who have treaties with the United States could extradite on one charge and, after receiving them, charge them with something more serious, a charge for which the receiving country would not have been granted an extradition certificate by the Judicial Officer.

For the reasons stated above and in previous filings the Plaintiff respectfully requests that Defendant's Motion To Dismiss be dismissed. Plaintiff further request that this Court grant Plaintiff's Complaint that the State Department's consent to the additional charge of complicity in premeditated murder lacked jurisdiction and be cancelled. Plaintiff also request that he be released from the Bureau of Prisons and that the Italian Government be notified of such action.

                                        Respectfully submitted,

March 24, 2008                          _____
                                        Robert Venetucci
                                        05108-000
                                        Federal Medical Center
                                        PMB 4000
                                        Rochester, MN   55903-4000


                         CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that a true and correct copy of this foregoing instrument has been mailed postage prepaid on this 25th day of March, 2008, to Jeffrey Taylor, AUSA at 555 4th Street, N.W., Washington, D.C. 20530 by handing to the mail room officer, FMC-Rochester's system for legal Mail.

                                        _____
                                        Robert Venetucci